WILLIAM S. LAMSON & another *vs.* JOSEPH C. MARTIN & another.

Suffolk.   March 21, 22, 1893. — October 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Patent — " Invention " — Conception of Idea — Evasion of Patent — Equity.*

A., who had invented a cash-carrier system, for which and for certain improvements made thereon by him he had obtained letters patent, organized, with two others, a corporation called the B. Company, for the purpose of engaging in the business of manufacturing, selling, and leasing cash-carriers under these patents, which, with all his property pertaining to the business, were transferred to it. Afterwards, a written agreement was entered into between C. of the first part, and A. and his associates of the second part, for the sale to and purchase by C. of all the stock and property of the B. Company, containing, among other representations, the following : " That said company is the lawful owner of all the patents of the United States, and is entitled to all foreign patents for cash or parcel carrying or store service invented or issued to said " A., " and also of all his inventions and applications for any other cash or parcel carrying apparatus." Some time after the making of this contract, A. obtained a patent for another cash-carrier, of which, at the date of the contract, he had only conceived vaguely three important and essential ideas, which, with others, were afterwards embraced in it, and which he had not reduced to practice ; and the first apparatus embodying them was not completed until many months after the contract was made. A corporation known as the A. Company was formed for the purpose of taking an assignment of this patent and engaging in the manufacture of cash-carriers under it. *Held*, that C. could not maintain a bill in equity against A. and the A. Company for the transfer of this patent.

The conception of an idea, except under some peculiar circumstances, does not constitute an invention, although there cannot be an invention without it.

The mental conception by A. of an improvement upon an existing apparatus invented by him, unreduced to practice and unexpressed in any physical form or descriptive specification, and described orally by him to others so as to indicate but vaguely the manner in which he proposed to embody and apply it, does not constitute an " invention " within the meaning of a representation, in a contract for the sale by A. to B. of certain property, including patents, that A. is the lawful owner of all domestic patents and is entitled to all foreign patents for such apparatus, " and also of all his inventions and applications for any other " like apparatus.

A conception does not constitute, under all circumstances, without anything more, an invention, because a skilled mechanic can reduce it to practice.

A bill in equity cannot be maintained to restrain the manufacture and use of a patented invention, on the ground that it is an evasion of the plaintiff's patent, if it is not an invasion of it.

One who has sold an article does not impliedly agree that he will not compete with the purchaser in the sale of the same or similar articles, or will not produce or sell anything that may serve as a substitute therefor.

MORTON, J.   This is a bill in equity, brought by the plaintiffs and prosecuted in their names for the benefit of the Lamson Consolidated Store Service Company.   The prayer of the bill is, in substance, that the defendants may be restrained from manufacturing, selling, or leasing a certain cash-carrier apparatus manufactured by them, and that they may be ordered to transfer the patent to the Martin and Hill Cash-carrier Company, to whose rights the Lamson Company has succeeded.

It appears that, prior to December, 1887, the defendant Martin had invented a cash-carrier system for which, and for certain improvements made thereon by him, he had obtained letters patent.   He formed a partnership with one Hill for the purpose of engaging in the business of manufacturing, selling, and leasing cash-carriers under these patents.   Afterwards one Pierce was taken into the firm.   In December, 1887, they organized themselves as a corporation under the laws of Maine, with the name of the Martin and Hill Cash-carrier Company, and the patents and all the property of the firm pertaining to the business were transferred to it.   Martin, Hill, and Pierce owned all the stock and were the directors.   On February 18, 1888, a written agreement was entered into between the plaintiffs of the first part, and Hill and Pierce of the second part, for the sale to and purchase by the plaintiffs of all of the stock and property of the Martin and Hill Cash-carrier Company.   It was contended by the plaintiffs that, if the agreement was not authorized by Martin at the outset, he afterwards became bound to perform it, and the presiding justice so found.   The contract was based upon certain written representations which were made a part of it.   Those material to the present case are contained in the second and seventeenth clauses, and are as follows: " Second, That said company [i..e. the Martin and Hill Cash-carrier Company] is the lawful owner of all the patents of the United States, and is entitled to all foreign patents for cash or parcel carrying or store service invented or issued to said Joseph C. Martin, and also of all his inventions and applications for any other cash or parcel carrying apparatus."   " Seventeenth, That said second party

hereby agrees and represents that said Joseph C. Martin will assign unto the first party all of his certificates of stock in said company, also all or any interest that he may have in any patent of cash or parcel carrying, or in any other property or material before recited, and that he will sign all papers necessary to be used in the Patent Office, and will execute in proper and legal form all applications or assignments or other papers that may be deemed necessary by the first party to complete the title to said patents, applications, or inventions, or the title to any or to all of said property as aforesaid."

Some time after the making of the contract the defendant Martin obtained a patent for another cash-carrier. A corporation known as the Martin Cash-carrier Company was formed for the purpose of taking an assignment of this patent, and engaging in the manufacture of cash-carriers under it. It is the object of this bill to reach this patent.

The plaintiffs contend that the invention which is the subject of the patent in suit had been made substantially by the defendant Martin when the above contract was entered into, and that they are entitled to it under the second clause, which represented that the Martin and Hill Company was the owner "of all his [Martin's] inventions and applications for any other cash or parcel carrying apparatus."

We have not found it necessary to consider several questions which have been discussed, namely, whether this court has jurisdiction, or whether the defendant corporation was a purchaser without notice, or whether Martin was bound by the contract. The case turns, in our view of it, upon the construction to be given to the second clause in the contract. Assuming, without deciding, that this court has jurisdiction, that the defendant corporation purchased with notice, and that Martin was bound by the contract, still we are unable to adopt the view for which the plaintiffs contend.

It is to be observed that the question is not one of priority between rival inventors, nor whether another party had anticipated the defendant Martin, nor whether the patent issued to him infringed the patents of the Martin and Hill Cash-carrier Company. This court would have no jurisdiction of such questions except perhaps as matters of purely collateral inquiry. *Albright* v. *Teas,* 106 U. S. 613. *Dale Tile Manuf. Co.* v. *Hyatt,* 125 U. S.

46.  It was conceded by the parties, and was assumed by the presiding justice, that the defendants' patent was a good one.

Neither do the plaintiffs now contend, as we understand them, that future inventions by Martin relating to cash-carriers were included in the contract.  We do not see how such a contention could be successfully supported.  There is nothing in the contract which in so many words refers to future inventions.  If there is any reference to them it is to be found in the representation already quoted in the second clause, that the Martin and Hill Cash-carrier Company was the owner "of all his [Martin's] inventions and applications for any other cash or parcel carrying apparatus," and in the agreement in clause seventeenth, that Martin will sign all papers " that may be deemed necessary . . . to complete the title to said patents, applications, or inventions." But taking the contract as a whole, the more reasonable construction of this language is, we think, that it refers to inventions then made.  If the parties had intended to contract for future inventions, language plainly expressing such a purpose naturally would have been used.  *Nesmith* v. *Calvert*, 1 Woodb. & Min. 34.

Nor do the plaintiffs contend that any representations were made by Hill or Pierce, or by any one, during the negotiations preceding or accompanying the contract, that Martin had then invented the system which the defendant company is using, or had then conceived what the plaintiffs assert to be its essential features, or that it was known to the plaintiffs that he had done so, if such was the fact.  Some of the foregoing considerations render the case of *Nesmith* v. *Calvert*, 1 Woodb. & Min. 34, which is relied on by the plaintiffs, inapplicable to this.  In that case the contract was made in advance of the completion of the invention and the issue of the patent, and contemplated that the plaintiff should have the benefit of the invention as finally made. The court expressly says in its opinion in that case : " It being admitted, that in the winter of 1841 he [the defendant] had not matured any part of his invention, — that his plans were but partially explained to any one, — that the plaintiffs then, in advance of their completion and a patent, bought and he conveyed all of his improvements, such as they would be when matured, — it was a natural form and design of the contract to reach everything then in embryo in his mind on this subject."

The question in this case is, therefore, whether Martin at the time when the contract of February 18, 1888, was entered into had made substantially the invention described in the patent in suit. In considering that question the plaintiffs are entitled, in view of the findings of the presiding justice, to the most favorable construction that fairly can be put upon the evidence. The presiding justice found that the system of the Martin and Hill Company was similar in its general character to that of the defendant company, and that at the date of the contract Martin had conceived the idea of the substitution of flanges on the sides of the box for the pins on top, of a delivery over instead of on one side of the main track, and of the substitution of a cam grip of the rope underneath the box for the one on the end used in the Martin and Hill system. He found that Martin had not made a model or drawing, and, as we infer, that he had not reduced these ideas to practice, though he found that he could if he wanted to do so. He further found, in substance, that a mechanic skilled in the art could have reduced these conceptions to practice, and that the defendant company's system could not be properly described as an improvement on the plaintiffs' system, but as a substitute for and an attempted evasion of it. He thereupon ruled that the plaintiffs were entitled to the relief prayed for, and were also entitled to restrain the defendants from the use of the patent, and from operating the system which they were using, in so far as it used flanges on the boxes, a switch track above the main track, and the cam grip as conceived by Martin at the date of the contract.

Whatever may be said of the weight of it, we cannot say that there was no evidence from which it could be inferred that Martin had conceived at the date of the contract the three ideas enumerated above. The justice who saw and heard the witnesses can judge better of their credibility than we. In a contest with a rival inventor, or with one impeaching his invention on the ground of its anticipation by another party, Martin would probably have been entitled to carry back his invention to the conception of these ideas. But the conception of an idea, except, perhaps, under some peculiar circumstances, does not constitute an invention, though there cannot be an invention without it.

The history of inventions shows that between the conception

of an idea and its realization in the form of an invention there often lie severe and long continued labor and repeated failures, and that success is not always achieved by the one who first strikes out the idea. When an invention is attacked on the ground of priority or anticipation, it is just that the inventor should be allowed, as one step in his invention, to show when he first conceived the ideas that are embodied in it. *Hill* v. *Dunklee*, 1 Mac-Arthur's Pat. Cas. 475. There can be no doubt also that Martin had sufficient property in his inchoate invention to enter into a valid contract with the plaintiffs, or any party or parties willing to do so, to complete the invention, and obtain a patent for it which he would assign. *Nesmith* v. *Calvert*, 1 Woodb. & Min. 34. *Marshall* v. *Peck*, 1 Dana, 609. *Clum* v. *Brewer*, 2 Curtis, C. C. 506, 519, 520. *Hendrie* v. *Sayles*, 98 U. S. 546. *Gayler* v. *Wilder*, 10 How. 477. But the parties did not attempt to deal with conceptions or inventions in embryo. The contract related to patents and property then existing, and, as already observed, to inventions then made. It contained no provision that Martin should complete this or any other invention. It cannot be contended for a moment that under this contract this court or any other court would have undertaken to compel Martin, if it had the power to do so, to complete the invention, procure a patent, and convey it to the Martin and Hill Cash-carrier Company. Under the circumstances and in view of the facts, as we suppose them to be, that parties interested in the Lamson Company sought by the contract to bring to an end expensive and onerous litigation and to exclude a competitor, it is singular that the contract contained no provision looking to future inventions by Martin. But we must take it as we find it.

We come back, then, to the question, Had Martin at the date of the contract invented the system used by the defendant company, or the features of it which the plaintiffs contend that he had, so that what he had done might fairly be described as an invention within the meaning of the contract? We think he had not. At most he had conceived vaguely three important and essential ideas which, with others, were afterwards embraced in it. He had not reduced these ideas to practice, and the first apparatus embodying them was not completed till many months after the contract of February 18, 1888. When he attempted with the as-

sistance of Chamberlain, a skilled mechanic, to embody in practice his conception of a cam grip, the first which was made was very different from that which was finally adopted and is now used, showing that, although he had conceived the idea of a cam grip, he had not then invented the gripping mechanism which is now used. The invention in this case did not consist in the discovery of a new application of a natural force, like that, for instance, of the telegraph or the telephone, or the making of iron rolls; (see *McClurg* v. *Kingsland*, 1 How. 202; *O'Reilly* v. *Morse*, 15 How. 62; *Burr* v. *Duryee*, 1 Wall. 531, 568; *Telephone Cases*, 126 U. S. 533;) but was for the combination in a new form of well known mechanical devices, which produced the desired result in a cheaper and better manner than it had been produced before. It was the machine as a whole which constituted the invention and was the subject of the patent. If it be admitted that an invention of such a character may exist without being presented in some physical form or description, at least it must appear, in order to amount to an invention, that the inventor has contemplated his idea as a perfected and practicable arrangement. *Loom Co.* v. *Higgins*, 105 U. S. 580, 593.

There is no evidence that Martin had done so with regard to the three ideas that have been referred to, either separately or in combination, in the defendants' system. As already observed, the first apparatus embodying them was not made until many months after the date of the contract, and it is not contended that he had then made or exhibited any drawing or specifications of it. The description by him of those ideas to which the witnesses for the plaintiffs testify does not indicate, except very vaguely, the manner in which he proposed to embody and apply them.

Thus, one Lissner testified that " he [Martin] gave a vague description of what he was going to do," and in answer to the question, " Suppose you tell us what he said he was going to do?" replied that " he stated that if you changed the box materially . . . the grip would be underneath . . . instead of this clasp and cord, so as to go right along; it would go underneath; I don't know which way he meant it, but something to that effect; and that it would not run the way this runs, and that it would be far less cumbersome." In answer to other questions, he stated that Martin said: " It would not go off on the side as

this [the Martin and Hill system] does; that it would not switch off on the sides; . . . instead of landing on the side it would be less cumbersome and land right on the top; . . . to avoid these pins the graduating would be from the side; . . . the side pieces . . . would guide the car up, instead of guiding it sidewise; . . . it would go up where it lands; instead of switching off this way, it would go up."

One Burgher testified that Martin said he could put a strip on the sides and do away with the pins; that he could put on a projection the same as it was on the edge, running the whole length of the side; and that instead of being on top it would be on the side.

Another witness, Jager, testified that Martin spoke about the different way he should make another box if he made one, and said that there was only one way of getting over that grip, (meaning the clutch on the carrier of the Martin and Hill system,) and that was by using a cam motion, which he illustrated with his knuckle, saying, "The harder you pull, the tighter it will grip."

There was other evidence, but the testimony of these witnesses, which is substantially stated above, was that mainly relied on by the plaintiffs to show that Martin at the date of the contract had invented the system described in the defendants' patent, or at least its substantial features. It is to be observed that Martin is represented as saying that the grip would be underneath if the box was changed materially; but there is no description by any witness of the manner in which the box was to be changed, and there is no description of the grip other than is contained in the illustration respecting the operation of a cam. Further, Martin is represented as saying that the carrier would land on top instead of on the side, but there is no description whatever of any mechanism by which it is proposed to accomplish that result, and no suggestion that the track is to consist of two rails instead of three. If Martin had done no more than to describe his ideas in the manner thus testified to by the plaintiffs' witnesses, and another person had afterwards invented the system used by the defendants, we think that nothing which Martin had done would have constituted a prior invention, so as to have prevented such person from being regarded as

the first and original inventor, and, as such, from obtaining a patent for his invention. *Whittlesey* v. *Ames*, 13 Fed. Rep. 893, 898. *Reed* v. *Cutter*, 1 Story C. C. 590. *Alden* v. *Dewey*, 1 Story C. C. 336. *Washburn* v. *Gould*, 3 Story C. C. 122. *Gayler* v. *Wilder*, 10 How. 477. In *Seymour* v. *Osborne*, 11 Wall. 516, 552, it is said that, "in order to constitute an invention, the party must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form." See also, to the same effect, *Coffin* v. *Ogden*, 18 Wall. 120, 124; *The Corn-Planter Patent*, 23 Wall. 181, 210, 211; *Clark Thread Co.* v. *Willimantic Linen Co.* 140 U. S. 481; *Agawam Co.* v. *Jordan*, 7 Wall. 583, 602; *Winans* v. *New York & Harlem Railroad*, 4 Fish. Pat. Cas. 1; *Reed* v. *Cutter*, 1 Story C. C. 590; *Loom Co.* v. *Higgins*, 105 U. S. 580; *Webb* v. *Quintard*, 9 Blatchf. C. C. 352, 358; *Parkhurst* v. *Kinsman*, 1 Blatchf. C. C. 488; *Goodyear* v. *Day*, 2 Wall. Jr. 283; *Bedford* v. *Hunt*, 1 Mason, 302, 304; *Washburn* v. *Gould*, 3 Story C. C. 122; *Heath* v. *Hildreth*, 1 MacArthur's Pat. Cas. 12; *Whittlesey* v. *Ames*, 13 Fed. Rep. 893, 898; *Gayler* v. *Wilder*, 10 How. 477, 496.

In these cases the court was considering what would constitute an invention under the patent law. From the contract in this case it appears that the word "inventions" was used in connection with "patents" and "applications for patents." There is nothing to indicate that the parties used it in a speculative sense, or in a different sense from that which naturally would be given to it in such a connection. In their contention that Martin's conceptions constituted an invention, the plaintiffs have relied upon principles laid down in deciding what constituted an invention under the patent law, and nothing else. If we were to give the word "inventions" in this case a broader meaning for the sake of doing what we might conceive to be justice to the plaintiffs, we might be doing an injustice to the defendants. By adhering substantially to the meaning given to it under the law of patents, we think we are adopting the sense in which it is ordinarily used in a commercial transaction like this. It is no doubt true, as the plaintiffs contend, that Martin's description of his ideas is to be considered as if, in connection with it, he had described the Martin and Hill system. But that does not relieve his description of them from the objection of being a description of vague

mental conceptions, or show that inventive skill was not required to reduce them to practice and conceive the other features in the defendants' system, and combine them all in successful operation as they are there displayed. We think that, according to the weight of authority, a mental conception of an improvement upon an existing machine, unreduced to practice and unexpressed in any physical form or descriptive specification, and stated only in the imperfect manner testified to in this case, does not constitute an invention within the meaning of a contract like the present one. See cases *supra.*

We do not think that, if the defendant Martin were seeking to enforce against the plaintiffs a contract to purchase his patents and inventions relating to cash-carrier systems, his conceptions as they have been described would constitute an invention, either together or separately, which he could have compelled the plaintiffs to take under the terms of the contract. We think, also, as we have already stated, that Martin's conceptions were not embraced in the contract.

There are other difficulties with the plaintiffs' case which are equally insuperable. The bill seeks to compel the transfer of the defendants' patent. The plaintiffs admit this. The patent includes not only the three ideas of Martin's which have been considered, but others, the date of whose conception is not fixed, and the apparatus described in it differs in many respects from the Martin and Hill system.

In the Martin and Hill system there are three round and parallel rods. The two lower rods form the main track. The upper one fits into notches on the top of the carrier, and performs the office of guiding and holding it in place on the track. In the defendants' system the upper rod is dispensed with. The track consists of two parallel strips or bars, with opposite grooves running lengthwise. The carriers are held in place and guided by flanges on their sides, which fit into these grooves. This construction is referred to in the specifications of the defendants' patent as one of its novel features, but there is no evidence to show when it was conceived by Martin. Again, in the defendants' system the gripping device on the carrier operates substantially automatically. In the Martin and Hill system it does not. The clutch only engages the cord when and as it is manipulated by the

operator. There is no evidence to show when this feature of the gripping device in the defendants' system was conceived.

In the Martin and Hill system the clutch tripper is on the main track, and operates before the carrier has reached the auxiliary track, leaving the carrier to go by its own momentum on to the auxiliary track and to the station. In the defendants' system it is on the auxiliary track, and so placed as to release the gripping device from the cord after the carrier has travelled a predetermined distance on the auxiliary track, and shortly before it reaches the station.

The carriers are different in their size and shape, and in respect to the devices used for opening and shutting them and confining their contents, as well as in the manner in which they are gripped to the driving cord.

These considerations render it obvious that, if the defendants are required to transfer their patent, the plaintiffs will not only get the benefit of the three ideas which they claim Martin had conceived at the date of the contract, but of much more to which they are not entitled in any just view of the case, or under any just application of the law relating to specific performance. They would get the benefit of his services for many months in perfecting and applying his ideas, without being obliged to compensate him therefor, and without there being any provision in the contract for anything of the kind. The plaintiffs are not entitled to be placed in any better position than that which they would have occupied had they brought their bill immediately after the contract was entered into. The most to which they would have been entitled then would have been an assignment to them by Martin (if that were possible) of the three ideas which it is found he had then conceived, and an application in his name for their benefit for a patent of the invention (if any) which they constituted, and an assignment of it to them when granted. See *Adams* v. *Messinger*, 147 Mass. 185.

The plaintiffs insist, however, that the invention described in the defendants' patent includes as its essential features the ideas which Martin had conceived at the date of the contract, and that the rest of it consists of details which were added as incidental to carrying those ideas out in a physical form, and are such as would have occurred to any skilled mechanic, and should

pass as part of the invention which they claim Martin's conceptions in effect constituted.

But the question is not whether Martin had at the date of the contract conceived ideas which were afterwards incorporated into the invention described in the defendants' patent, and became its essential features, but whether he had then made the invention for which that patent afterwards issued. For reasons already given, we do not think he had, or that those ideas constituted the invention described in the defendants' patent.

In the next place, we are not satisfied that inventive skill was not required to reduce Martin's conceptions to practice, and to conceive the other features used in connection with them, and to combine the whole in successful operation. We doubt whether a skilled mechanic, with only the description of Martin's ideas testified to by the plaintiff's witnesses, could, except after trials more or less numerous, and the exercise of more or less inventive skill, have produced the system described in the defendants' patent. Martin himself, though he had conceived the idea of a cam grip, did not at once succeed, even with the assistance of Chamberlain, a skilled mechanic, in making the device now used on the defendants' machine; and it was many months before he succeeded in putting his system into practical operation. We think, also, the contention asserts in effect the right of the plaintiffs, independent of any contract, to Martin's services gratuitously, in reducing his conceptions to practice and embodying them with various details and improvements in the invention described in the patent. Such a proposition cannot be supported. The argument of the plaintiffs, baldly stated, is that a skilled mechanic with Martin's three conceptions could have produced the invention described in the patent, and therefore the invention consists of those conceptions. One difficulty, and perhaps a sufficient one, with the argument is, as we have already stated, that we doubt the correctness of the premises. Another is that no case to which we have been referred makes such a condition of things a test of an invention in the case of an improvement upon an existing invention or a substitute therefor, and we should hesitate to lay down such a rule. We are aware of no authority which holds that a conception constitutes, under all circumstances, without anything more, an invention, because a skilled mechanic can reduce it to practice.

The plaintiffs further insist that the defendants' system is an evasion of their system. In this they are supported by the finding of the presiding justice, who found that the defendants' system was not properly described as an improvement upon the plaintiffs' system, but as a substitute for and an attempted evasion of it. If this finding means that the defendants' system is an infringement of the plaintiffs' system, then the plaintiffs have a complete remedy for the infringement in the courts of the United States, where such actions are exclusively cognizable, and where it appears that a suit is now pending in favor of the plaintiffs against the defendants for alleged infringement. If the defendants' system is not an infringement of the plaintiffs' system, then they have a right to manufacture and use it, although it was intended as a substitute for and an evasion of the plaintiffs' system. In *Burr* v. *Duryee*, 1 Wall. 531, 574, the court say : " Every man has a right to make an improvement in a machine, and evade a previous patent, provided he does not invade the rights of the patentee." See also page 571 of the same case.

There is no principle of law which holds that one who has sold an article impliedly agrees thereby that he will not compete with the purchaser in the sale of the same or similar articles, or will not produce or sell anything that may serve as a substitute therefor.

If Martin's conceptions did not constitute an invention within the meaning of the contract upon which the plaintiffs rely, then the fact that the system which he subsequently invented, and which the defendant company is using, was intended as a substitute for and an evasion of the plaintiffs' system, does not entitle the plaintiffs to relief.

For the reasons stated, a majority of the court are of opinion that the bill should be dismissed, and it is

*So ordered.*

*G. O. Shattuck & M. B. Phillip* of New York, (*L. S. Dabney* with them,) for the plaintiffs.

*C. Browne & R. M. Morse*, (*H. L. Harding* with them,) for the defendants.