RICHARDSON SHOE MACHINERY COMPANY *vs.* ESSEX MACHINE COMPANY.

Essex. November 2, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Contract*, Construction, Rescission. *Patent. Equity Jurisdiction*, Specific performance, Damages. *Equity Pleading and Practice*, Decree.

Two corporations, which were engaged in producing a cutting press for dieing out uppers of boots and shoes, made an agreement in writing concerning a machine then in process of construction embodying the invention and improvements of a certain inventor, as follows : " Each of the aforesaid companies is to pay one half of all expenses incurred in the making of the experimental machine and any further machines which they may mutually agree upon, and the cost of obtaining patents, etc., and each is to own an undivided half interest in the machines, patents, etc., and neither company is to sell, lease, grant licenses to use, or otherwise dispose of, or make use of its half interest without the written consent of the other company." *Held*, that this contract covered and established the rights of the parties to the invention itself and to the application for a patent as well as to the patent when that should have been obtained, that the subject matter of the agreement was not limited to the experimental machine mentioned, and that the agreement could not be regarded as merely a license.

Cases cited by SHELDON, J., upon the point that an inventor or his assignee before the issuing or the allowance of a patent has an inchoate right of property in his invention and in a pending application for a patent, which he may assign or otherwise deal with as an article of property.

In a suit in equity to compel the specific performance of an agreement in writing, if the defendant contends that the contract sought to be enforced was rescinded, but it appears that after the time of the alleged rescission the plaintiff and the defendant both treated the contract as still in force and respectively performed their obligations under it in accordance with its terms, that neither of them acted in any respect as if the contract had been done away with and that no assertion to that effect was made by the defendant until shortly before the filing of the bill, the defense of rescission cannot be sustained.

It is settled that an application for the specific performance of any agreement is addressed to the discretion of the court, to be exercised upon equitable considerations in view of all the circumstances of the particular case.

In a suit in equity by one corporation against another, to compel the specific performance of an agreement in writing concerning a cutting press for dieing out uppers of boots and shoes, which then was in process of construction, embodying the invention and improvements of a certain inventor, it appeared that, at and before the time of making the agreement, the plaintiff was engaged in selling sewing machines for the manufacture of shoes, that these machines were made for the plaintiff by the defendant, and that the object of the parties in making the agreement was to obtain a machine to be manufactured by the defendant and sold by the plaintiff to the profit of both of them, and to make

provision that this new machine should be manufactured and sold only by themselves and should not be available for their competitors in business, the principal one of such competitors being a certain corporation called the United Company, that afterwards the United Company became the owner of all the property of the plaintiff except the contract sought to be enforced, and also acquired and held all the capital stock of the plaintiff, so as to dominate and control its future action, and that the suit to compel specific performance of the agreement was brought in the name of the plaintiff for the benefit of the United Company. *Held*, that under the circumstances shown the enforcement of the agreement would operate in a manner different from that intended by both parties when the agreement was made, the acts of the plaintiff after its making having destroyed the common purpose of the parties, so that a specific performance ought not to be decreed.

In a suit in equity brought in the Superior Court by one corporation against another to enforce the specific performance of a contract, where it appeared that, although the plaintiff had offered to do all that was required of it by the contract and the defendant had refused performance, a change in the relation of the parties to each other after the making of the contract made a decree for its specific performance inequitable, this court ordered that the bill should be dismissed without prejudice to an action at law, unless the plaintiff should request the Superior Court to retain the bill for an assessment of damages and the Superior Court should see fit to grant its request.

BILL IN EQUITY, filed in the Superior Court on November 20, 1909, to enforce the specific performance of the following agreement in writing:

" Whereas the Essex Machine Co., and the Richardson Shoe Machinery Co., both of Lynn, Mass., are engaged in producing a Cutting Press for Dieing out Uppers of Boots and Shoes:   It is hereby agreed as follows:

" Each of the aforesaid Companies is to pay one half of all expenses incurred in the making of the experimental machine and any further machines which they may mutually agree upon, and the cost of obtaining patents, etc., and each is to own an undivided half interest in the machines, patents, etc., and neither Company is to sell, lease, grant licenses to use, or otherwise dispose of, or make use of its half interest without the written consent of the other Company.

" Signed this 27th day of April 1908.

" Essex Machine Co.,<br>Geo. A. Fuller Treas.<br>" Richardson Shoe Machinery Co.

R. S. M. Co.                    by J. H. Richardson Mg."
       Seal

The case was heard by *Fessenden*, J., who reserved and reported the evidence and all questions of law in the case for determination by this court.

*W. B. Farr*, (*N. B. Todd* with him,) for the plaintiff.

*W. Quinby*, (*M. B. May* with him,) for the defendant.

SHELDON, J. It is undisputed that the agreement now sought to be enforced was made concerning the machine then in process of construction and embodying the invention and improvements of Reed, which is mentioned in the plaintiff's bill. The plaintiff contends that by the correct construction of this agreement it is now entitled to a decree declaring that it is jointly interested with the defendant in the invention and improvements, and ordering the defendant to assign to it a one half interest therein and in the application for letters patent now pending in the name of the defendant as assignee of Reed. The defendant rests its contention that no such decree should be entered, upon the grounds that the agreement was not to be carried out and cannot be enforced until letters patent upon the invention shall have been actually issued, that there is no agreement to assign anything, that the alleged agreement is only a license and has as yet no other subject matter than an experimental machine, which is of no value; and that before the assignment made by Reed to the plaintiff the agreement was rescinded and abrogated by the parties and is no longer in existence. It is also suggested that the agreement, if otherwise valid and enforceable, yet ought not to be specifically enforced in equity, for the reason that since it was made the United Shoe Machinery Company has become the owner of the entire capital stock of the plaintiff, and all the tangible property of the latter except this agreement has been transferred to that company (hereinafter called the United Company), the plaintiff having been theretofore a competitor in business of the United Company; that this suit is now prosecuted at the instance and really for the benefit of the United Company, and that the result of its success would be and is intended to be to prevent the defendant from putting upon the market the new machines in competition with those of the United Company, or at least materially to hamper the efforts of the defendant in that direction, whereas the main object of both the plaintiff and the defendant in making the agreement was to

enable them, the one as the manufacturer and the other as the seller of the projected machines, to compete better and more advantageously with the United Company.

1. In our opinion, the agreement in question was designed to make the parties the equal owners of both the invention and of any letters patent that might be issued thereon. Each of them was to pay one half of the cost of constructing the experimental machine and of any other machines that might be agreed upon. They were to contribute equally to the cost of obtaining patents. Each was to own an undivided half interest in the machines and the patents. It was clearly contemplated that the title to the invention itself as well as to the patent that might be obtained thereon should be vested by proper instruments of assignment or otherwise in both parties, and that, except as limited by the terms of the agreement itself, each one should have the power to deal with its own interests; for there was an express stipulation that neither party should sell or lease its half interest or grant any licenses thereunder or make any other use or disposition thereof without the written consent of the other party.

The inventor or his assignee has before the issuance or allowance of a patent an inchoate right of property in his invention and in a pending application for a patent, which he may assign or with which he may deal as an article of property. *Somerby* v. *Buntin*, 118 Mass. 279. *Adams* v. *Messinger*, 147 Mass. 185. *Currier* v. *Hallowell*, 158 Mass. 254, 255. *Lamson* v. *Martin*, 159 Mass. 557, 562. *Burton* v. *Burton Stock Car Co.* 171 Mass. 437. *Gaylor* v. *Wilder*, 10 How. 477. *Runstetler* v. *Atkinson*, MacArthur & M. 382. The assignments or licenses which might have been made by the parties under this agreement could have been made before as well as after the actual issuance of the patent or even the filing of the application therefor. It seems plain to us that the agreement must be construed to cover and establish the rights of the parties to the invention itself and to the application for a patent as well as to the patent when that should have been obtained.

2. For the same reasons the subject matter of the agreement is not limited to the experimental machine therein mentioned; and it would not be material to determine the value of that

machine. Nor can the agreement be regarded as merely a license.

3. Upon the evidence it does not satisfactorily appear that the agreement has been abrogated or rescinded. The defendant relies mainly upon the fact that when the application was about to be made Richardson, who represented the plaintiff, caused two assignments to be drawn, each transferring a one half interest in the invention, the application, and the patent to be issued thereon, and running respectively to the plaintiff and the defendant. The agreement now in suit was shown to Reed the inventor, and he was requested by Richardson to execute the assignments in order to carry out the intent of the agreement. Reed however refused to do so, and declared that he would not assign his invention to any one while that agreement remained in force. Richardson said that he desired only the agency to sell the proposed machines, or as one witness put it, that he merely "wanted the selling end." Reed also said that he would not assign to the Richardson Company at all, and that he would assign to the defendant only if that agreement was done away with. Richardson made no reply to this, and thereupon Reed made the assignment to the defendant. It does not appear that Reed was under any obligation to assign his rights to either of the parties; indeed, there are in the evidence some intimations to the contrary; and it cannot be presumed that there was such an obligation. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 201.

The question presented is very different from what it would be if this suit were against Reed. In that event it might forcibly be contended that Reed's action had been induced by the silence and apparent acquiescence of the plaintiff acting through Richardson, and that the plaintiff could not now assert against Reed that the agreement remained in force. But Reed is not a party to this suit; he has not sought to intervene and no present rights of his are shown to be involved in it. He has parted absolutely with his right to control the invention and the patent that may be obtained thereon, and is not concerned with any future disposition that may be made thereof. The only question is between the plaintiff and the defendant; and the contention that they have abrogated the agreement can be estab-

lished only by proof that the minds of both of them have met in an assent to that proposition, or that the plaintiff is estopped as to the defendant to deny that there has been such an assent. *Banewur* v. *Levenson,* 171 Mass. 1, 12. *Rollins* v. *Marsh,* 128 Mass. 116, 120. Undoubtedly we must consider what took place, as already stated, just before the assignment to the defendant was made; but this is only one item of evidence. After the defendant had taken its assignment, and after the alleged rescission of the agreement, both parties treated it as still in force. Various items of expense incurred in prosecuting the application for a patent or for labor and materials upon the machine or models thereof were paid by one party and contributed to by the other, as was called for by the agreement. Neither of them acted in any respect as if the agreement had been done away with. No such assertion was made by the defendant until the fall of 1909, shortly before the filing of the bill. This ground of defense must fail.

4. At and before the time of making this agreement the plaintiff was engaged in selling a sewing machine for the manufacture of shoes, and these machines were made for it by the defendant. The plaintiff had also the American agency for selling an English machine used in that manufacture, called a "clicking press"; and Reed's invention was for an improved clicking press. It appears from the evidence that the object of the parties to the agreement was to obtain a new clicking press, which should be manufactured by the defendant and sold by the plaintiff to the profit of both parties, and to make it certain that this new machine should be used only by themselves and should not be available to their competitors in business, the principal one of those competitors being the United Company. In other words, one of the leading motives of both parties in making the agreement was to enable them, in their respective domains of seller and manufacturer, to compete more successfully with the United Company. But plainly the carrying out of this purpose under the agreement will be materially impeded and probably wholly prevented by the fact that the United Company has now not only become the owner of all the property of the plaintiff except this agreement, but also has acquired and now holds all the capital stock of the plaintiff, and so wholly dominates and controls its

future action. It is true that the plaintiff's corporate identity remains unchanged, and that the plaintiff offers to do all that is required of it by the terms of the agreement. But it still remains true that the object which was in the minds of the parties, the object which it was their main purpose to achieve in making the agreement, will no longer be attained, will probably be made incapable of attainment, if the agreement is specifically enforced. Under such circumstances specific performance ought not to be decreed.

It is settled that an application for the specific performance of any agreement is addressed to the judicial discretion of the court, to be exercised upon equitable considerations in view of all the circumstances of the particular case. *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. *Thaxter* v. *Sprague,* 159 Mass. 397. The fact that an agreement would now operate in a manner different from what was present in the minds of both parties when it was made is of itself a sufficient reason for refusing specific performance. *Western Railroad* v. *Babcock,* 6 Met. 346, 352. *Lee* v. *Kirby,* 104 Mass. 420, 427. This is the underlying doctrine of such cases as *Cawley* v. *Jean,* 189 Mass. 220, 225; *Lamson* v. *Martin,* 159 Mass. 557, 562; and *Chute* v. *Quincy,* 156 Mass. 189. This case is not one in which the purpose of only one party unknown to the other will be frustrated, as in *Morley* v. *Clavering,* 29 Beav. 84; *Adams* v. *Wear,* 1 Bro. Ch. 567; and *Hickson* v. *Clarke,* 25 Grant Ch. 173. Here the common purpose of both parties has been destroyed by the act of the plaintiff after the agreement was made. That this is a sufficient reason for refusing specific performance is manifest. *Stone* v. *Pratt,* 25 Ill. 25. *Gotthelf* v. *Stranahan,* 138 N. Y. 345. *Bradford, Eldred & Cuba Railroad* v. *New York, Lake Erie & Western Railroad,* 123 N. Y. 316, 326. *Wadick* v. *Mace,* 191 N. Y. 1. *Waters* v. *Howard,* 8 Gill, 262, 281. *Pingle* v. *Conner,* 66 Mich. 187, 193.

The bill must be dismissed without prejudice to an action at law, unless the plaintiff shall request the Superior Court to retain the bill for an assessment of damages and that court shall see fit to grant its request. *Banaghan* v. *Malaney,* 200 Mass. 46.

*So ordered.*