J. N. CHUTE *vs.* JOSIAH QUINCY & another.
JOSIAH P. QUINCY & another *vs.* J. N. CHUTE.

Norfolk.    January 26, 1892. — April 2, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Agreement to convey Land — Specific Performance — Mistake.*

A bill in equity for the specific performance of a contract for the sale of lands will not be enforced where the defendant shows that by mistake and without fault he entered into an agreement very different from that which he thought he was making, and engaged to do something far more onerous than that which he supposed he was undertaking, and where the plaintiff, being cognizant of the mistake, did not disclose it.

A suit in equity asking to have an agreement to convey a parcel of land reformed, or delivered up and cancelled, will be dismissed if the parties were not acting under a mutual mistake, or if there was no proof of fraud.

THE FIRST CASE was a bill in equity, filed in this court for a specific performance of an agreement to convey land.    The second case was a bill to reform the same agreement, or to have it surrendered and cancelled.    Hearing before *Lathrop*, J., who, at the request of the parties, reported the cases for the consideration of this court.    The facts in the two cases, so far as material to the points decided, appear in the opinion.

The cases were argued at the bar in January, 1892, and afterwards were submitted on the briefs to all the judges.

*S. W. Creech, Jr.*, for the petitioners.

*E. M. Parker*, for the respondents.

KNOWLTON, J.    The plaintiff in the first case entered into a contract in writing for the purchase from the defendants of a lot of land which was one of a large number of lots held by them

as trustees.    The property was described in the contract as "a certain lot of land, being lot numbered 23 on plan of Chailes S. Miller, dated April 10th, 1890, and recorded," etc.    This plan showed a great number of building lots, about eight hundred in all, designated by numbers, with the lengths of their boundary lines given and the number of square feet contained in each marked in plain figures.    Lot No. 23 contained 9,230 square feet, but by a mistake of the surveyor the figures marked on the plan were 3,230.    The defendant's agent in negotiating with the plaintiff agreed to sell the lot for $430.66, determining the price by computing the value of 3,230 square feet at $13\frac{1}{3}$ cents per foot.    It is found as a fact, that the defendants made the contract under a mistake as to the contents of the lot, and in the belief that it contained only 3,230 square feet.    The defendants' agent did not inform the plaintiff how he fixed the price.    The plaintiff "admitted that, when he examined the lot, he had a copy of the above mentioned plan, and that he noticed at the time of his negotiations with the agent that lot 23 was larger than lot 22 or lot 24, the adjoining lots on either side, and that he knew that lot 23 contained more square feet than the plan stated."    The dimensions of lots 22 and 24 were plainly marked on the plan, and it is hard to believe that one buying a lot apparently for his own use, to be paid for in small instalments, as the contract shows, would not so far investigate the subject, when the boundaries were pointed out to him, and when he had a copy of the plan before him, and "knew that lot 23 contained more square feet than the plan stated," as to find out the nature and extent of the mistake, especially when the shape of the lot and the lengths of its boundary lines, and the size and shapes of other lots in the vicinity, were all correctly given on the plan.    It is fair to presume that, before making his purchase, he had some knowledge of the prices at which the defendants were accustomed to sell lands in the vicinity.    Whatever his knowledge or ignorance on this subject, he concealed from the defendants' agent his discovery of the mistake in the plan, and took a contract which described the lot merely by a reference to the plan.

It may be that the plaintiff was free from fraud in the transaction, — the findings certainly do not go far enough to show

that he was guilty of it. The parties were not acting under a mutual mistake, and, in the absence of proof of fraud, or of mistake as to what land was to be conveyed, the cross-bill brought by the defendants in the first case, asking to have the contract reformed or delivered up and cancelled, must be dismissed.

The remaining question is whether the plaintiff should have a decree for specific performance of the contract. If we assume that the contract is good at law, it does not follow that it will be specifically enforced in equity. It is a universally recognized principle, that a court of equity will not decree specific performance of a contract when it would be inequitable so to do. Specific performance may be refused when a contract is hard and unreasonable, so that enforcement of it would be oppressive to the defendant, or where there has been misrepresentation by the plaintiff on a material point, or other unfair conduct, although it may not be sufficient to invalidate the contract, or where the defendant has by mistake, not originating in mere carelessness, entered into a contract different from that intended by him, notwithstanding that there was no unfairness on the plaintiff's part. Adams, Eq. 83, 85 ; 2 Story, Eq. Jur. § 769.

Says Chief Justice Shaw, in *Western Railroad* v. *Babcock*, 6 Met. 346, 352: " A defendant, therefore, may not only show that the agreement is void, by proof of fraud or duress, which would avoid it at law; but he may also show that, without any gross laches of his own, he was led into a mistake, by any uncertainty or obscurity in the descriptive part of the agreement, by which he, in fact, mistook one line or one monument for another, though not misled by any representation of the other party, so that the agreement applied to a different subject from that which he understood at the time; or that the bargain was hard, unequal, and oppressive, and would operate in a manner different from that which was in the contemplation of the parties when it was executed. In either of these cases, equity will refuse to interfere, and will leave the claimant to his remedy at law." This principle was applied in *Boynton* v. *Hazelboom*, 14 Allen, 107, and the rule prevails generally in the State and Federal courts of the United States, as well as in England. *Malins* v. *Freeman*, 2 Keen, 25. *Webster* v. *Cecil*, 30 Beav. 62. *Manser* v. *Back*, 6 Hare, 443. *Leslie* v. *Tompson*, 9 Hare, 268. *Wood* v. *Scarth*, 2 Kay &

Johns. 33. *King* v. *Hamilton*, 4 Pet. 311, 328. *Willard* v. *Tayloe*, 8 Wall. 557, 565. *Perkins* v. *Wright*, 3 Har. & M'H. 324. *Leigh* v. *Crump*, 1 Ired. Eq. 299. *Cannaday* v. *Shepard*, 2 Jones Eq. 224. *Eastland* v. *Vanarsdel*, 3 Bibb, 274. *Bowen* v. *Waters*, 2 Paine C. C. 1. *Veth* v. *Gierth*, 92 Misso. 97. *Burkhalter* v. *Jones*, 32 Kans. 5.

The recently decided case of *Mansfield* v. *Sherman*, 81 Maine, 365, is identical in principle with the one at bar. There the defendant in New York offered for sale, through an agent in Maine, lot No. 12 on a certain plan of lands in Bar Harbor, for $2,500, in ignorance of the fact that the lot, as delineated on the plan, contained a valuable building site which he supposed to be upon another lot, and specific performance of the agreement was denied, though the plaintiff had in no way contributed to the defendant's mistake, and was entirely ignorant of it.

On broad grounds of morality it may be said to be inequitable for a plaintiff to enforce a contract against a defendant, who shows that by mistake and without fault he entered into an agreement very different from that which he thought he was making, and engaged to do something far more onerous than what he supposed he was undertaking. In some English cases that is stated to be the ground on which relief is refused to a plaintiff who innocently entered into a contract which the defendant signed under a mistake. This principle must be adhered to unless specific performance of a contract for a sale of lands is to be decreed as a matter of right wherever a plaintiff shows that he has a contract enforceable at common law. We see no reason for introducing such an innovation in equity practice, or for disregarding the rule that courts of equity will grant relief only when the plaintiff asks for that which in equity and good conscience ought to be granted.

In the present case, it is admitted that, through a mistake, the defendants agreed to sell their land for about one third of the price which they supposed they were getting for it; and that, while the plaintiff knew that there was a mistake in the plan which might naturally mislead the defendants in making their bargain, he did not disclose it. Under these circumstances, a majority of the court are of opinion that the plaintiff must be left to his remedy at law upon his contract.

*Bill and cross-bill dismissed.*