## EDWARD CAWLEY vs. WILFRID JEAN.

Middlesex.   December 1, 1904. — October 17, 1905.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & LORING, JJ.

*Contract*, Construction. *Equity Jurisdiction*, Specific Performance. *Equity Pleading and Practice*, Appeal.

An agreement in writing to sell certain described land and the building thereon, if the building extends beyond the land described, is not an agreement to sell the building and the land under it.

It is a defence to a suit for the specific performance of a contract to buy from the plaintiff certain land and the building thereon, that the defendant through an honest mistake not attributable to his own negligence thought that he was buying a strip of land over which the building extended which was not included in the description in the contract, but the burden is on the defendant to make out this defence.

In a suit for the specific performance of a contract to buy certain real estate from the plaintiff, it is not sufficient evidence of a good title in the plaintiff for him to put in a deed purporting to be signed by the executor and trustee under the will of one who held the title to the real estate in question, on which is written an assent, release and quitclaim deed purporting to be signed by ten persons described as being all the heirs, devisees, legatees, next of kin, and persons interested in the estate of the testator, and to show that the plaintiff ever since has claimed under this deed, there being no proof that the will of the alleged testator was admitted to probate, or that any action was taken under it to bar the assets being taken for the debts of the testator, or that the ten persons signing the deed were in fact all the heirs, devisees, legatees, next of kin, and persons interested in the estate.

In a suit for the specific performance of a contract to buy certain real estate from the plaintiff, if the defendant has excepted to the finding of a master that the plaintiff has shown a good title to the real estate to be conveyed by him, and the judge has overruled the exception, the defendant, although he has not appealed from this interlocutory order, under R. L. c. 159, § 26, may show on an appeal from a final decree for the plaintiff, that the exception to the finding should have been sustained, as the interlocutory order affects the final decree.

THE following statement of the case is taken from the opinion of the court :

This is a bill in equity for the specific performance of a

written agreement contained in a lease whereby the defendant agreed to buy the property let on the expiration of the term created by the lease. There was a cross bill alleging that the agreement had been procured by the fraud of the plaintiff in the principal suit, and praying that it be delivered up and cancelled. The case went to a master, who reported that both the bill and cross bill should be dismissed. Exceptions to the report were taken by both parties. The exceptions of the plaintiff were sustained and those of the defendant overruled by the Superior Court. From this order no appeal was taken. Subsequently a final decree was entered directing the defendant to specifically perform the agreement, and dismissing the cross bill. From this decree the appeal was taken which is now before us.

It appears from the master's report that in 1878 the Middlesex Company conveyed to one Nathan Crosby the following lot of land: "A certain lot of land in said Lowell, situated on the southerly side of Church Street, and easterly of the land of the Lowell and Andover Railroad, containing one thousand four hundred and thirty square feet, as shown by a 'Plan of Middlesex Company land taken by the Lowell and Andover Railroad,' in possession of said Middlesex Company, bounded and described as follows: beginning at a point on the southerly side of Church Street, which is fifty-six feet easterly of the intersection of the southerly side of said Church Street, and the easterly side of Warren Court, thence easterly along the southerly side of said Church Street sixty-five feet to the line of Concord River; thence southerly along the line of said river forty-nine and one-half feet to land of the Lowell and Andover Railroad; thence along the land of said Lowell and Andover Railroad sixty-five feet to the point of beginning." This land is shown by a plan which was attached to the record and a reduced copy of which is printed on the next page. What are called the deed lines on the plan are the lines given by the distances stated in the deed. In 1878 a building was erected on the land, which is still standing and is the building here in question, except that the bulkhead shown on the plan was built in 1895. A deed of this land to the plaintiff was made in 1890, the description being the same as in the deed to Crosby.

The report states that " At the time the plaintiff received the deed last mentioned and for eight or nine years prior thereto, a fence stood on the land on which the Lowell and Andover Railroad was located, distant about ten feet from, and nearly parallel to the southwesterly side of said building, and extending from a point a foot or two northwest of the Concord River for about sixty feet, thence turning and extending to Church Street in a nearly northerly direction, and intersecting Church Street at a point about ten feet west of the building, thence turning and running along the line of Church Street to the northwesterly corner of the building. The tracks of the Lowell and Andover Railroad are and were at the time the plaintiff received the deed

last mentioned on the southwesterly side of said fence, the rail nearest thereto being some seven or eight feet distant therefrom. . . . In 1895 the plaintiff made an entrance into the basement of the building on the southwesterly side by cutting an opening in the foundation wall about four feet wide and eight feet deep, and made an area by removing the adjacent soil for a distance on the land of the Lowell and Andover Railroad of about seven feet in length, four feet in width and seven feet in depth. This area was covered by a wooden bulkhead, attached to the building, covered with a heavy trap door, and extending to about one foot above the level of the land adjacent. A wooden door opened into the basement. I find as a fact that said bulkhead is a part of said building."

In 1896 the plaintiff fitted up the building on the land as a steam laundry, and occupied it as such for nine months. After that it was vacant until it was let by word of mouth to the defendant for the same purpose on October 21, 1901. On March 8, 1902, this oral lease was put in writing and contained the agreement here sued on. The premises let by this indenture of lease were "the land and building thereon situate on the west side of the Concord River in said Lowell, bounded easterly by said river, — westerly by the location of the Lowell and Andover Railroad, and northerly by Church Street, being a triangular lot, together with all fixtures and machinery to said Cawley belonging in said building." The agreement contained in said lease to buy these premises was in these words: "And said Jean agrees at the expiration of the term hereinafter limited to buy the aforesaid real and personal property of said Cawley for the entire price of seven thousand dollars." The lease expired on April 21, 1903. On April 18 the defendant was informed that the building covered more land than the plaintiff owned, and on April 20 he told the plaintiff of this, and offered to carry out the agreement if the plaintiff would "give him enough land to cover the building." This the plaintiff refused to do. On May 23 the plaintiff tendered a deed and bill of sale. The land covered by this deed is described as in the deed of it to the plaintiff and in that to the plaintiff's grantor. The defendant said he would take the deed if the plaintiff would "deed him more land." The plaintiff said that all he could give him was what was described in the deed. Thereupon the defendant refused to accept the deed and bill of sale, and on June 23 he vacated the premises.

No question was raised as to the machinery. In his report the master states that the defendant set up in defence that there were three parcels of land not covered by the building: (1) The triangular strip on the east, measuring two and ninety one hundredths feet at its base on Church Street; (2) the land under the eaves on the west, which protruded twenty-three inches over the division line; and (3) the land under the bulkhead. As to the first the master found that the land of the plaintiff went to the river because monuments control distances; as to the second that the plaintiff had an easement acquired by prescription; and

as to the bulkhead he found " that the plaintiff has at no time possessed any title to or easement in the land under said bulkhead, which bulkhead I find, as above stated, to be a part of said building, and I find and rule that by reason of the plaintiff's inability to convey said land or any easement therein, the defendant is under no obligation to perform said agreement of purchase. I find that the use and enjoyment of said bulkhead and the land thereunder was a material inducement to the entering into of said agreement on the part of the defendant."

The defendant in his answer set up a false and fraudulent representation by the plaintiff that he owned all the land covered by the building and the ten foot strip shown on the plan east of the fence there shown.

On this the master made the following finding : " In regard to the allegation of fraud, I find that at the time of entering into the oral arrangement of October 21, 1901, the defendant believed that the plaintiff owned all the land covered by the building, and the ten foot strip of land between the southwesterly side of the building and the fence, and extending from Church Street to the Concord River, but that such belief was not induced by any statement or conduct of the plaintiff, on which the defendant had a right to rely, but was caused by the appearance of the building, and its surroundings. I find that the plaintiff said or did nothing to prevent the defendant from ascertaining the amount of land which the plaintiff owned, and that the defendant was negligent in not examining the title and making a survey of the premises. I find that this belief of the defendant as to the plaintiff's ownership continued at least up to March 8, 1902. If in view of my other findings, the belief of the defendant as to the plaintiff's ownership of said ten foot strip or of any part thereof is material in any aspect of the case, and if the burden rests upon the plaintiff of proving that the defendant had actual knowledge or actual notice of the plaintiff's want of ownership in said ten foot strip, or in any part thereof, I find that said burden had not been sustained, and that the defendant had no such knowledge or notice until April 18, 1903. If the burden rests upon the defendant of proving his ignorance of such want of ownership, I find that such burden has not been sustained, and that on March 8, 1902, at the time of the execution of said

written agreement he was informed and knew that the plaintiff did not own said ten foot strip or any part thereof. I find, if material, that the defendant did not at any time have knowledge or notice that the plaintiff had built and was maintaining said bulkhead without right on land not owned by him, but on the contrary, at all times believed that said bulkhead had been rightfully erected and maintained, and that upon complying with said written agreement of October 21, 1901, he could continue to use and enjoy said bulkhead without lawful hindrance on the part of any person whatsoever."

*E. I. Baker*, (*G. N. Shorey* with him,) for the defendant.

*J. J. Devine*, for the plaintiff.

LORING, J. [After the foregoing statement of the case.] No appeal having been taken from the order overruling the defendant's exceptions, they are not now before us except so far as the final decree is erroneously affected by their having been overruled. R. L. c. 159, § 26.

The principal attack made by the defendant on the final decree is that the plaintiff did not own the bulkhead nor the ten foot strip between the building and the fence on the west, and that the defendant honestly thought that he did.

As matter of construction of the agreement it is the land bounded on the west by the location of the railroad and the building on that land which the plaintiff agreed to sell and the defendant to buy, not the building and the land under it. The land and the building thereon does not include the bulkhead or the ten foot strip. See in this connection *Crosby* v. *Parker*, 4 Mass. 110; *Wood* v. *Commissioners of Bridges*, 122 Mass. 394.

But if the defendant through an honest mistake not attributable to his own negligence thought that he was buying more than the agreement covers, that is a defence to a bill for specific performance. *Western Railroad* v. *Babcock*, 6 Met. 346, 352. *Old Colony Railroad* v. *Evans*, 6 Gray, 25, 36. *Boynton* v. *Hazelboom*, 14 Allen, 107. *Chute* v. *Quincy*, 156 Mass. 189. See also in this connection *Spurr* v. *Benedict*, 99 Mass. 463.

The burden is on the defendant to make out this defence. *Western Railroad* v. *Babcock*, 6 Met. 346, 352. *Chute* v. *Quincy*, 156 Mass. 189, 191.

So far as the defence founded on the ten foot strip goes, the master has found that if the burden of proving his ignorance of the plaintiff's want of ownership was on the defendant it was not sustained. This is in substance a finding that the defendant did not prove that there was such a mistake.

As to the defendant's having mistakenly thought that the bulkhead was to be his, the findings of the master are not altogether clear to us. He has found in terms " that the defendant did not at any time have knowledge or notice that the plaintiff had built and was maintaining said bulkhead without right on land not owned by him, but on the contrary, at all times believed that said bulkhead had been rightfully erected and maintained, and that upon complying with said written agreement of October 21, 1901, he could continue to use and enjoy said bulkhead without lawful hindrance on the part of any person whatsoever," and it would seem that he made this finding without regard to the burden of proof. He had previously found that if the burden was on the defendant as to " the belief of the defendant as to the plaintiff's ownership of said ten foot strip or of any part thereof," it was not made out, and it is a fact that the bulkhead was built on part of the ten foot strip. Whatever may be the true interpretation of these two findings, the finding " that the defendant was negligent in not examining the title and making a survey of the premises " must be taken to be decisive, if the case is to be finally disposed of on this record. It does not appear from the master's report what if any use had been made of the bulkhead in the past, or whether there was any way leading to and from it. In short, we do not know the evidence on which this finding of the master was made. The negligence in not finding out the title to the ten foot strip would seem to cover the bulkhead which is a part of that strip of land.

But we are of opinion that the plaintiff did not go far enough in showing that he had a good title to the land to be conveyed by him. Had the plaintiff shown that the title which Nathan Crosby got in 1878 had come to the plaintiff, it might perhaps have been sufficient. Without expressing a final opinion on that point it is enough to dispose of this contention that there was no sufficient evidence of the fact that the plaintiff got Nathan

Crosby's title. The plaintiff went no farther than to put in a deed "purporting to be signed by Stephen M. Crosby, executor and trustee under the will of Nathan Crosby, on which deed was written an assent, release and quitclaim under seal, purporting to be signed by ten persons, described as 'being all the heirs, devisees, legatees, next of kin, and persons interested in the estate of Nathan Crosby, late of Lowell, deceased.'" In addition he proved that "the plaintiff has ever since claimed title, and now claims, except as against this defendant, title under said Stephen M. Crosby deed to the premises described therein." There was no proof showing what the will of Nathan Crosby was, or that it had been admitted to probate, or of any action taken under it to bar the assets being taken for Nathan's debts, and no proof that the ten persons signing the deed were in fact all the heirs, devisees, legatees, next of kin, and persons interested in his estate as they described themselves to be. This is not enough. See *Chauncey* v. *Leominster*, 172 Mass. 340.

This objection was taken at the trial. The title of the plaintiff was put in issue by the answer. The master in his report found and ruled that by a proper construction of the Middlesex Company and the Crosby deeds, "the plaintiff derived a good and sufficient title to the premises therein described." An objection was taken to this ruling, and an exception founded on that objection.

The exception to this ruling should have been sustained. Although no appeal was taken from this interlocutory order, it affects the final decree and so was open on an appeal from that decree, by force of R. L. c. 159, § 26. *Parker* v. *Flagg*, 127 Mass. 28. See also *Burnett* v. *Commonwealth*, 169 Mass. 417. There is nothing to the contrary in the decision in *Haskell* v. *Merrill*, 179 Mass. 120.

Whether the case shall be sent to the master for further hearing is for the Superior Court.

> *Decree disaffirmed, and such further order or decree to be entered as seems to the Superior Court in accord with equity and good conscience.*