ARTHUR F. BREED & another *vs.* ARTHUR BERENSON & others.

Suffolk.    December 2, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, & DE COURCY, JJ.

*Equity Jurisdiction,* Specific performance, Fraud, Mistake. *Attorney at Law.*

In a suit in equity brought by an attorney at law and a collector of claims against the members of a firm of attorneys at law, to enforce the specific performance of

an alleged agreement of the defendants to share equally with the plaintiffs the compensation received by the defendants for their services rendered in a certain suit to clients who previously had employed the plaintiffs to collect claims for them, a master found, on evidence warranting such findings, that one of the plaintiffs had stated to one of the defendants that the plaintiffs had been consulted and employed by the clients in question and had authority to control the suit in question and to employ senior counsel, that these statements were false, although the plaintiff who made them believed them to be true, that, induced wholly by these statements and with no other consideration than their mistaken belief in them, the defendants made an agreement to share with the plaintiffs the compensation received by the defendants for their services in the suit, and that afterwards the defendants, on learning that the clients never intended to employ the plaintiffs as counsel but only had asked their advice as to the proper persons to employ as counsel in the suit in question, refused to be bound by their agreement. *Held*, that, whether the inducement on which the defendants had made their promise was considered on the ground of imputed fraud or of mutual mistake, it would be inequitable to order a specific performance of their agreement.

DE COURCY, J.   This is a bill in equity in which the plaintiffs seek to have established and enforced specifically a contract between them and the defendants Berenson and Garland, whereby they were to share equally the compensation received for legal services in certain litigation in favor of the defendants Gilmore against the General Electric Company.   In the alternative they seek to recover from all the defendants upon a *quantum meruit* the value of the services rendered by them in that litigation.

The case is before us on the appeals of the plaintiffs from the interlocutory decree overruling their exceptions to the master's report, and from the final decree.*

We see no reason for reversing any of the findings of the master to which objection was made, and the exceptions were overruled rightly; but this is without prejudice to the consideration of the same questions so far as they are comprehended in the appeal from the final decree.   The third paragraph of the final decree, by which the defendants Howard Gilmore and William Gilmore are ordered to pay $1,000 to the plaintiffs on the claim upon a *quantum meruit*, is not contested by the parties.   There remains for consideration the main question involved in this controversy, that is, whether that portion of the final decree is warranted which adjudges that the defendants Berenson and Garland are not indebted to the plaintiffs, or either of them, on account of the express contract.

* The suit was brought in the Supreme Judicial Court, and both the interlocutory and the final decree were made by *Braley, J.*

Among the facts found by the master are these: The plaintiff
Jenkins is not a lawyer, but is manager of a company whose chief
business is that of collecting claims. Previous to July 26, 1912,
for several years he had been employed by the defendants Gilmore
to collect claims for them, and his compensation was a certain per-
centage of the amounts collected. The plaintiff Breed is a member
of the bar; his office adjoined that of Jenkins, his name was placed
upon writs that went from Jenkins's office, and he usually attended
to the actions that Jenkins brought. The defendant Garland had
been employed by the plaintiffs in several matters of litigation.
He had acted for the Gilmores in but one case, referred to as the
Hyde case; his employment was through the plaintiffs, and the
results were entirely satisfactory to the Gilmores. This was the
only case in which there had been an agreement to divide fees in
equal parts among the plaintiffs and Garland.

On the forenoon of July 26, 1912, in the course of an interview
between the Gilmores and Breed at the latter's office, they stated
that they had a claim against the General Electric Company, and
the nature of it. After some discussion as to competent counsel,
Breed suggested that they employ Garland to handle the case for
them. Thereupon Garland was called to Breed's office, and after
a conference, was employed by the Gilmores, was directed to
bring proceedings as soon as possible, and was authorized to em-
ploy counsel to assist him. Garland asked for all the correspond-
ence and other papers connected with the claim, and an appoint-
ment was made for a subsequent meeting at his office. The find-
ing of the master, after hearing all the witnesses, is that the Gil-
mores did not intend to employ the plaintiffs as counsel, but went
to their office only to get their advice as to the proper person to
engage as counsel, and that they did not suppose they had em-
ployed the plaintiffs. Upon an examination of the entire report
we cannot say that this conclusion of the master is wrong, or in-
consistent with his other findings.

At noon of this day Breed and Garland, upon the invitation of
Breed, lunched together, and during the luncheon the matter was
discussed further. Breed told Garland that the Gilmores had been
consulting Jenkins and himself for some time, and wanted him,
Breed, to bring a suit against the General Electric Company that
day, but, as it was an important matter, he thought it better to

take Garland into it as senior counsel, as he had done in the Hyde case, and that he supposed it would be satisfactory if they should divide the fees as they had in the Hyde case; and to this Garland assented. Later, Berenson was engaged by Garland with the assent of the Gilmores. Garland told the plaintiffs of this fact, and it was mutually agreed that the fees should be equally divided among the four. The master finds that at the time of the conversation between Breed and Garland at luncheon on July 26, the Gilmores had not in fact employed Breed and Jenkins as counsel in the matter of their claim against the General Electric Company, and had not even talked with the plaintiffs about this specific claim before that day.

An examination of the entire report shows that the master was well warranted in his further finding that the promises of Garland and Berenson to divide the fees with the plaintiffs were largely and to a material degree induced by the statements made by Breed to Garland on July 26, which were in effect that the plaintiffs had control of the suit and were authorized to employ senior counsel. And, as the report states, "there was nothing in the case to show that the promises to divide the fees were based upon any service to be rendered or any advantage to be furnished by the plaintiffs to Garland or Berenson, or either of them, . . . and no . . . service was thereafter rendered by the plaintiffs either to Garland or Berenson. . . . Neither Breed nor Jenkins was competent to draw the pleadings or discuss the case in court, or to be of valuable assistance in the negotiations which led up to the settlement."

After suit had been brought, and as a result of many conferences, all matters in dispute between the Gilmores and the General Electric Company were settled in November, 1912, by the payment of $282,500; and a bill for $19,000, rendered by Garland and Berenson, was paid by the Gilmores. The plaintiffs now seek to recover one half of this compensation. It appears that when $1,000 was received on account of retainer and expenses in September, and $250 of it was paid to the plaintiffs, nothing had happened which made the defendants Garland and Berenson think that Breed and Jenkins had not been employed by the Gilmores. Since the disclosure of the true situation, these defendants have refused to be bound by the agreement to share their fees with the plaintiffs.

On the facts found by the master, the statements made by Breed

were in substance that the plaintiffs had been consulted and employed by the Gilmores with authority to control the suit against the General Electric Company and to employ senior counsel. As found by the single justice, these representations went to the very essence of the contract involved in this suit. Garland and Berenson were largely and to a material degree induced thereby to make the contract here in issue, and there was no other consideration, present or future. The representations were false. They were none the less so by reason of the fact that in the master's opinion Breed honestly believed himself to have been employed as counsel by the Gilmores, and full effect to that opinion is given by the decree in his favor as against them, which is not contested. The material misrepresentations to the effect that the plaintiffs had been consulted by the Gilmores, and had the control of the suit and the authority to retain senior counsel, necessarily were made as of Breed's personal knowledge and were made with intent that they should be acted upon, as in fact they were acted upon by Garland, and later by Berenson. The reasonable inference to be drawn from these facts is that the plaintiffs were guilty of fraud, in a legal sense. *Smith* v. *Kenney,* 213 Mass. 6. And the inference drawn by the master seems justified only if taken in the sense that there was no conscious misrepresentation.

It is also true, as found by the single justice, that, even assuming that all the parties were acting honestly and in good faith, there never was a meeting of their minds by reason of the mutual mistaken belief that Breed could bind the Gilmores because he had been retained to employ counsel and controlled the suit; a mistake as to the basis on which the agreement was entered into. The existence of a binding contract is put in issue by the denials of the defendants; and the burden is on the plaintiffs to show that such a contract was made   Whether considered on the ground of fraud or of mutual mistake, under such circumstances it would be inequitable to decree specific performance as prayed for, and we are of opinion that the final decree was warranted. As the defendants Garland and Berenson received nothing under the agreement in controversy to divide fees, no question arises as to putting the parties *in statu quo. Chute* v. *Quincy,* 156 Mass. 189. *Richardson Shoe Machinery Co.* v. *Essex Machine Co.* 207 Mass. 219. *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403. *Weeks* v. *Currier,* 172

Mass. 53. *Roberts* v. *Anheuser Busch Brewing Association,* 211 Mass. 449. *Dzuris* v. *Pierce, ante,* 132.

*Decree affirmed.*

*H. R. Bailey,* for the plaintiffs.
*B. B. Jones,* for the defendants.