### The American Agricultural Chemical Company & others *vs.* Aetna Casualty and Surety Company.

Suffolk.   October 1, 1934. — December 7, 1934.

Present: Rugg, C.J., Crosby, Pierce, Field, & Donahue, JJ.

*Estoppel.   Bond,* To dissolve attachment, Validity.   *Mistake.*

Both parties in a suit in equity believed that an attachment made by the plaintiff covered the defendant's real estate in both the southern and northern registry districts of a certain county, whereas it covered only the real estate in the southern district. After the attachment, the defendant gave a bond to dissolve it pursuant to G. L. c. 223, § 125, the bond reciting an attachment only of real estate of the defendant located in the northern district and his desire to have it dis-

solved. In a subsequent action against the surety on the bond, the surety set up the equitable defence that the plaintiff could not recover because the bond had been given under a mutual mistake of the parties to the suit in equity. It was found that there had been nothing to lead the plaintiff in the suit in equity to believe "that the bond was being furnished to avoid an attachment which might be threatened or impending," although he would have immediately procured an attachment of the real estate in the northern district if he had been informed that it was not covered by the attachment made; and that the bond was furnished under a mutual mistake of fact of the parties to the suit in equity. It appeared that neither party's mistake was induced by representations of the other party. There was a finding for the surety in the action. *Held*, that

(1) The surety was not estopped to show that the recital in the bond, that an attachment of real estate in the northern district had been made, was false;

(2) The finding as to mutual mistake was warranted;

(3) There was no error in a refusal to rule in substance that the principles of equitable rescission were inapplicable;

(4) On the facts, the bond was ineffective as a bond given under the statute;

(5) In view of the finding, that there had been nothing to lead the plaintiff in the suit in equity to believe "that the bond was being furnished to avoid an attachment which might be threatened or impending," the bond could not be enforced as a common law obligation supported by detriment to the plaintiff and benefit to the defendant in the suit in equity;

(6) The finding for the surety was warranted.

CONTRACT. Writ dated January 30, 1931.

The action was heard in the Superior Court by *Walsh*, J., without a jury. Material evidence, findings by the judge and rulings given and refused by him are described in the opinion. He found for the defendant. The plaintiffs alleged exceptions.

*S. C. Rand*, (*P. H. Rhinelander* with him,) for the plaintiffs.

*D. J. Triggs*, (*E. W. Beasley* with him,) for the defendant.

PIERCE, J. This is an action of contract brought against the defendant for breach of a bond executed by Edward T. Murphy, as principal, and the defendant, as surety. The action was tried before a judge of the Superior Court sitting without a jury. He filed a "Report of Facts, Rulings, and Findings." The case is here on the plaintiffs' exceptions.

The facts found are in substance as follows: On May 8,

1923, the plaintiffs filed in the Superior Court a bill in equity against Edward T. Murphy, of Medford in the county of Middlesex, and fourteen other defendants. On the same date the plaintiffs procured a special precept of attachment, and gave instructions to the attaching officer to attach real estate of the said Murphy in Middlesex County. There are two registry districts in Middlesex County, the northern district and the southern district. Murphy owned real estate in the southern district and he also owned a farm in Billerica in the northern district. The attaching officer attached real estate of said Murphy situated in the southern district only, and made return thereof accordingly, and the real estate in the northern district was never subsequently attached. The plaintiffs' attorneys and Murphy believed that an attachment had been made that covered all of Murphy's real estate in Middlesex County. On July 18, 1923, under G. L. c. 223, § 125, Murphy procured a bond in the penal sum of $10,000 from the defendant surety company. This bond was approved by a master in chancery and filed in the Superior Court on July 30, 1923. It recites the attachment on the property in the northern district and the desire of Murphy to have it dissolved. The express condition of the bond is that Murphy would pay to the plaintiffs within thirty days after "final judgment" in the equity suit the amount of the "judgment" up to $10,000. On October 30, 1930, the plaintiffs "obtained judgment" against Murphy and others of the aforesaid defendants in the equity suit in the sum of $183,466.50. This "judgment" has not been satisfied in whole or in part by said Murphy. Executions were issued under final decree after rescript on December 16, 1930.

The defendant's answer is a general denial and an allegation by way of equitable defence that the plaintiffs cannot recover because the bond was given under mistaken belief of the parties in the existence of its subject matter.

The trial judge found that the attorneys for the plaintiffs "assumed said real estate [in the northern district] had been attached, relying on the instructions given [by them] to the attaching officer," and made no examination of the

officer's return on the special precept to ascertain if the instructions had been complied with; that the plaintiffs intended to attach all the property of Murphy in Middlesex County, and if it had come to their attention that he owned real estate in said northern district which was neither covered by attachment nor covered by a bond given to release an attachment, instructions would have immediately been given for its attachment; that "There was nothing in the conduct or interviews to lead the plaintiffs' attorneys to assume that the bond was being furnished to avoid an attachment which might be threatened or impending, although such bonds, similar or identical in tenor were sometimes furnished for the purpose of avoiding attachments"; that the bond was furnished by the defendant when both Murphy and the plaintiffs believed that the real estate in question was under attachment, and that the parties were mutually mistaken; and "that the parties in this action and in the original action were mutually mistaken."

The trial judge granted the plaintiffs' requests for rulings numbered 3 and 4, in substance, that "The truth . . . of the facts recited in the bond were matters of public record" which were "available to the defendant" at the time of the execution of the bond; and that the defendant's mistake "was not induced by any representation of the plaintiffs."

He ruled, as requested by the defendant, that the bond is not a bond of general indemnity but a bond given pursuant to G. L. c. 223, § 125, to obtain by the force and effect thereof "(a) A dissolution of an attachment upon the property described in the bond; [and] (b) A release of the property described in the bond from an attachment"; that "The defendant is not estopped to deny the recital in the bond that an attachment had been made"; that "If there was no attachment but both parties believed there was, the defendant is not estopped to deny the recital in the bond that there was an attachment"; that "If the bond was given solely to discharge or release an attachment, and if no attachment existed, and if the plaintiffs and the defendant mistakenly believed it did exist, there can be no recovery on it"; and that "Upon all the evidence

the plaintiffs are not entitled to recover." To these rulings and the denial of certain rulings requested by the plaintiffs the plaintiffs duly excepted.

The main contentions raised by the plaintiffs' requests for rulings, and argued in their brief, are (1) that the defendant, because of the recitals in the bond, which induced the plaintiffs not to make further or other attempt to attach real estate of said Murphy in the northern district, is estopped to deny that the real estate of said Murphy in the northern district was attached; (2) that the defendant cannot avail itself of the defence of mistake of fact because the mistake, if any, was induced by the negligence of the defendant or the misrepresentation of its principal, (3) that the doctrine of equitable rescission has no application to the furnishing of a bond under G. L. c. 223, § 125, for the reason that the bond "was not voluntarily taken by the plaintiffs in a separate transaction with the defendant and the defendant's principal, Edward T. Murphy"; (4) that the defendant's obligation to pay the judgment up to $10,000 was in nowise altered by the nonexistence of the attachment or the mistake in reference thereto; and (5) that since the bond was under seal and there was no misrepresentation by the plaintiffs it is immaterial that Murphy did not receive any consideration for the bond. Other issues raised are whether the defendant was discharged from any obligation under the bond by amendments made by the plaintiffs in the equity suit, and whether there was a breach of the bond in view of the fact that all the plaintiffs did not recover judgments against said Murphy.

The plaintiffs cite *Briggs* v. *McDonald*, 166 Mass. 37, 39, and *Britton* v. *Goodman*, 235 Mass. 471, 474, in support of their position that the bond "accomplished the substantial purpose for which it was given" and the defendant having "obtained the full fruits of its bargain is not now entitled to avoid its obligation on the ground that no valid attachment was in fact ever made." In the cases cited property had in fact been taken by attachment and surrendered or released on the giving of the bond, and in each case the

defendant was estopped for the reason that the obligor had received what was bargained for, i.e., the quiet possession of the property. The same result was reached where, with the knowledge of all parties that no attachment had been made, the obligor gave a bond which induced the obligee to believe that the attachment was unnecessary. *O. Sheldon Co.* v. *Cooke*, 177 Mass. 441, also cited by the plaintiffs. For other examples of estoppel based on proof that the obligor had received all he bargained for, see *Wood* v. *Willis*, 110 Mass. 454, 457, 458; *Bassett* v. *Crafts*, 129 Mass. 513, 517; *Granger* v. *Parker*, 142 Mass. 186, 190; *Pray* v. *Wasdell*, 146 Mass. 324, 328; *Olds* v. *City Trust, Safe Deposit & Surety Co. of Philadelphia*, 185 Mass. 500, 502. In the case at bar none of the elements of estoppel found in the cited cases was present. Here neither the legal nor the actual possession of the property in the northern district ever was taken from Murphy since no attachment of any sort was made. Hence, as a result of giving of the bond, no obstacle, legal or practical, to Murphy's complete enjoyment of possession was removed through any effort of the plaintiffs. The trial judge found: "There was nothing in the conduct or interviews to lead the plaintiffs' attorneys to assume that the bond was being furnished to avoid an attachment which might be threatened or impending." It follows that the plaintiffs' forbearance or failure to make a new attachment in the northern district could not estop the defendant to deny that any attachment had actually been made in said northern district on the theory that any mistake that had been made was the mistake of the defendant only; nor could it be based on the theory that recitals in the bond induced a mistake on the part of the plaintiffs.

The finding of the trial judge that the bond was executed under a mutual mistake was sound as a legal theory and was supported by the evidence. The bond having been given under a mutual mistake of fact, not induced by fraud or misrepresentations of the defendant, it follows that the defendant should not be estopped to show the falsity of the recitals in the bond. *Rogers* v. *Bishop*, 9 Gray, 225. *Conant* v. *Newton*, 126 Mass. 105, 108, 109. *Blaney* v. *Rogers*, 174

Mass. 277, 279, 280. *Dzuris* v. *Pierce*, 216 Mass. 132, 137. *O'Reilly's Case*, 258 Mass. 205, 209. *Grymes* v. *Sanders*, 93 U. S. 55, 61. Apart from the bar of estoppel, it is unquestioned that no attachment was made on the northern district property.

It seems clear from the recitals of the bond that the trial judge's ruling that the "bond . . . was given pursuant to G. L. c. 223, § 125" was amply justified. The object of G. L. c. 223, § 125, was to enable an owner of attached property to dissolve, by force of the statute, an existing attachment by the filing of an approved bond. It is settled that bonds failing to satisfy the statutory formal requisites have no validity as statutory bonds. *Central Mills Co.* v. *Stewart*, 133 Mass. 461, 462. *Wall* v. *Kelly*, 209 Mass. 370, 371. *Massasoit-Pocasset National Bank* v. *Borden*, 228 Mass. 581, 583. *Waverly Lumber Co.* v. *Piantedosi*, 262 Mass. 377. It is plain that the bond failed to dissolve an existing attachment, insuring to Murphy the free use and enjoyment of his property pending the outcome of the equity suit. The plaintiffs contend that the dissolution of the attachment was the immediate occasion for giving the bond and that the ultimate purpose was to prevent the plaintiffs from taking any further proceedings against the property thereafter. The facts do not support the plaintiffs' contention, and, as above said, the defendant is not estopped to prove the facts outside the recital in the bond. *Martin* v. *Jablonski*, 253 Mass. 451. *Breed* v. *Berenson*, 216 Mass. 397. *Conant* v. *Newton*, 126 Mass. 105. *Blaney* v. *Rogers*, 174 Mass. 277. *Downey* v. *Levenson*, 247 Mass. 358. *Peugh* v. *Davis*, 96 U. S. 332. *Bedell* v. *Wilder*, 65 Vt. 406.

The bond in the action cannot be treated as a common law obligation for the reason that the obligor has not received the benefit of the dissolution of the attachment for which he bargained. The evidence would not warrant a finding that the plaintiffs were induced to refrain from making an attachment and thus suffered a detriment or that the defendant received a benefit because the property was not attached. So to hold would be to decide that the

plaintiffs were entitled to claim an attachment which had never been made.

The rulings of the trial judge are legally supportable, and the plaintiffs' requests for rulings which were not given were properly denied.

*Exceptions overruled.*